IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY DEANE WARD,

                Petitioner,

    vs.

M.D. BITTER,

                Respondent.

No. 2:12-cv-00047-JKS

MEMORANDUM DECISION
and
ORDER [Re: Motion at Docket No. 34]

## I. BACKGROUND/PRIOR PROCEEDINGS

Presently before this court is Jeffrey Deane Ward's Amended Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed *pro se* in June 2012. Ward and co-defendant Raymond Walker were charged with the murder of Serge Zubenko. It was further alleged that Ward intentionally and personally used a firearm, thereby causing great bodily injury or death to Zubenko, and that Walker was the principal and was armed with a firearm during the commission of that offense. The defendants were also charged with the special circumstance enhancement that the murder was intentional and perpetrated by the discharge of a firearm from a motor vehicle. Both were also charged with second degree drive-by murder.

Both defendants originally pled not guilty. Walker later changed his plea and pled guilty to manslaughter and being armed during the commission of the crime. Walker was sentenced to 12 years in prison.

A jury convicted Ward of first-degree murder, and found the special circumstance enhancement to be true. The jury was hung as to the allegation that Ward used a firearm, and the court declared a mistrial as to that allegation. Ward was sentenced to a prison term of life

without the possibility of parole.  Ward is currently in the custody of the California Department

of Corrections and Rehabilitation and is incarcerated at Kern Valley State Prison.

## II. GROUNDS/ISSUES RAISED

In his Petition to this Court, Ward claims as follows: (1) there was insufficient evidence

that the shooter discharged a firearm intentionally at the victim with the intent to kill, rather than

merely shoot at the car, thereby denying Ward due process of law under the Fourteenth

Amendment; (2) the trial court erred in failing to instruct the jury *sua sponte* on voluntary

manslaughter and provocation/imperfect self-defense, in violation of Ward's Sixth Amendment

right to a fair trial and his Fourteenth Amendment right to due process; (3) the trial court erred in

responding to the jury's questions about Ward's liability under the theory of aiding and abetting;

(4) the trial court erred in admitting inflammatory character evidence, thereby violating Ward's

Fourteenth Amendment right to due process; (5) the trial court erred in instructing the jury on

out-of-court statements, thereby violating Ward's Fourteenth Amendment right to due process;

(6) ineffective assistance of trial counsel and improper finding of facts by the judge in the

sentencing hearing; (7) he was denied the opportunity to call Walker to the stand, amounting to

ineffective assistance of counsel and judicial misconduct; (8) trial counsel was ineffective for

failing to investigate or call Chantel Eidel as a witness and for meeting infrequently with Ward;

(9) the special circumstance which made Ward eligible for life without the possibility of parole

was also used to elevate the murder charge to first degree in violation of the Double Jeopardy

Clause of the Fifth Amendment, and his sentence amounted to cruel and unusual punishment in

violation of the Eighth Amendment; and (10) the trial court failed to require the prosecution to

prove every element of the offense charged by not allowing Ward to call Walker to the stand.

2

Respondent has answered, and Ward has replied.  Respondent does not raise any affirmative defenses.  Ward has also requested an evidentiary hearing.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling, Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).  In applying these standards in habeas review, this Court reviews this "last reasoned decision" by the state court.

3

*Robinson v. Ignacio*, 360 F.3 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  When there is no reasoned state-court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary."  *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).  However, "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).  Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state-court decision was "objectively unreasonable."  *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citation omitted).  In conducting an independent review of the record, this Court presumes that the relevant state-court decision rested on federal grounds.  *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991).  Moreover, this Court gives that presumed decision the same deference as a reasoned decision.  *Richter*, 131 S. Ct. at 784-85.  The scope of this review is for clear error of the state-court ruling on the petition.  *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decision."  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

IV. DISCUSSION

**A. Evidentiary Hearing**

Although state prisoners may sometimes submit new evidence in federal court, "AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011). Provisions like §§ 2254(d)(1) and (e)(2) ensure that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id*. (citing *Williams,* 529 U.S. 437).

Accordingly, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state-court proceeding has not developed the relevant facts after a full hearing. *Pinholster*, 131 S. Ct. at 1398-99. Ward did not request an evidentiary hearing in his petition for habeas corpus relief in the superior court. However, in his petition for habeas relief in the California Supreme Court, Ward included just immediately below the space for the case number "Evidentiary Hearing Requested." Ward similarly requested an evidentiary hearing in the caption of his First Amended Petition. In this Court, as was the case in the state court, Ward does not identify what evidence or testimony is to be proffered at an evidentiary hearing. Nor did Ward identify any contested factual issue that would have required the California courts to hold an evidentiary hearing to resolve. Thus, it cannot be said on the record that the state court precluded him from developing the factual basis for his claim. Because Ward has not identified any factual conflict that would require this Court to hold an evidentiary hearing to resolve, his request for an evidentiary hearing is **denied**.

**B. Motion at Docket No. 34**

At Docket No. 34, Ward filed a Motion to Amend his Petition.  Ward seeks to amend his petition to clarify that he is alleging "judicial misconduct."  Construing his petition broadly, *Erikson v. Pardus*, 551 U.S. 89, 94 (2007), Ward adequately preserved the argument in his First Amended Petition.  Although he did not use the words "judicial misconduct," Ward did allege that the court improperly prevented Walker from taking the stand.  Accordingly, amending the petition is unnecessary and Ward's Motion at Docket No. 34 is **denied**.

**C. Merits**

<u>1. Claim One: Insufficient Evidence that the Shooter Discharged a Firearm Intentionally and with the Intent to Kill</u>

Ward contends that there was insufficient evidence that the shooter discharged a firearm intentionally at the victim with the intent to kill, rather than merely to shoot at the car, and as a result he cannot be held liable for first-degree murder or the special circumstances sentence enhancement.  Ward argues that a conviction not supported by substantial evidence violates the Due Process Clause of the Fourteenth Amendment.

On direct appeal, the California Court of Appeal noted that the scope of appellate review of a claim of insufficiency of the evidence is "extraordinarily narrow," and that the court must review the record "in the light most favorable to the verdict to determine whether there is evidence of reasonable, credible, and solid value upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt."  *People v. Ward*, No. C060610, 2010 WL 3038090, at *4 (Cal. Ct. App. Aug. 5, 2010) (citations omitted).  The court rejected Ward's sufficiency of the evidence claim as follows:

> The Attorney General accepts defendant's legal premise that to be found guilty, the shooter must have intended to shoot at the victim and not merely at the car. But defendant's argument is defeated not by the law, but by the facts. The jury might have accepted defendant's theory that the shooter did not intend to kill the victim when shooting at him at close range through the car door.  The jury, however, rejected that inference based on the equally reasonable inference that the shooter was either a poor aim or knew the bullet would penetrate the door and his victim as well. Given defendant's remarks following the shooting, the jury could reasonably infer that defendant intended to shoot the victim, who was little more than a sitting duck. On this evidence, we are not at liberty to upset the jury verdict.

*Id.*, at *3-4.  The California Supreme Court denied Ward's Petition for Review.

As articulated by the Supreme Court in *Jackson v. Virginia*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. 307, 319 (1979); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (emphasizing the twice-deferential effect involved when this standard is coupled with the "objectively unreasonable" standard).  This Court must, therefore, determine whether the state court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved conflicts in testimony, weighed the evidence, or made inferences.  *Jackson*, 443 U.S. at 319.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id*. at 326.

In this case, the court of appeal did not unreasonably apply *Jackson*.  Rather, the court resolved any conflict in the evidence in favor of the prosecution and found that there was evidence to support a finding by a rational trier of fact that Ward did shoot and intend to kill the

victim–namely, Ward's statements after the shooting that he did shoot the victim and that the victim "got what he deserved."  Ward bears the burden of establishing that these factual findings were erroneous, 28 U.S.C. § 2254(e)(1), a burden he has failed to carry.  The record does not compel the conclusion that no rational trier of fact could have found proof of guilt, especially considering the double deference owed under *Jackson* and AEDPA.  Accordingly, Ward is not eligible for relief on this claim.

### 2. Claim Two: Failure to Instruct on Manslaughter and Provocation/Imperfect Self-Defense

Ward does not contend in this claim that defense counsel did or should have requested a jury instruction on manslaughter but instead argues that the court should have *sua sponte* instructed the jury on voluntary manslaughter and that provocation or imperfect self-defense negate the malice necessary for murder.  Ward also claims that the instructions given by the trial court were incomplete because they failed to identify the "absence of provocation and absence of imperfect self defence [sic]," and that accordingly the state was not required to prove every element of murder.

On direct appeal, the court of appeal rejected Ward's claim that the trial court should have *sua sponte* instructed the jury on voluntary manslaughter or that provocation or imperfect self-defense negate the malice necessary for murder.  The court held that under California case law a court in a murder trial must *sua sponte* instruct a jury on every theory of a lesser included offense, such as voluntary manslaughter, that is supported by the evidence.  *Ward*, 2010 WL 3038090, at *6.  "By the same token, a murder defendant is not *entitled* to instructions on the lesser included offense of voluntary manslaughter if evidence of provocation or imperfect self-

defense, which would support a finding 'that the offense was less than charged,' is lacking." *Id.* (quoting *People v. Rios*, 23 Cal. 4th 450, 463 n.10 (2000)).

The court of appeal held that evidence supporting a jury instruction on voluntary manslaughter and provocation/imperfect self-defense was "clearly lacking," and that the court was accordingly "not obligated to refine its instructions on malice to correlate to a theory lacking in evidentiary support." *Id.* at *6. A defendant intends to kill but lacks malice if he acts in "a sudden quarrel or heat of passion" or kills in the unreasonable belief that it is necessary to defend himself from imminent peril to life or great bodily injury." *Id.* at *4 (citing *People v. Lee*, 20 Cal. 4th 47, 59 (1999); *People v. Rogers*, 39 Cal. 4th 826, 883 (2006)). The court held that although Ward alleged that someone wiped grease on Walker's shirt after shaking his hand and that the Russians' collective behavior was threatening, the incident would not have inflamed the passions of an ordinary person, and there was "no evidence upon which to base an actual belief that they were in the kind of imminent danger of immediate harm 'that must be instantly dealt with.'" *Id.* at *5 (quoting *Rogers*, 39 Cal. 4th at 883). Ward's claim that he was not the shooter was a "red herring," because even assuming Walker was the shooter, the evidence did not support the instruction at issue. *Id.* The California Supreme Court denied Ward's Petition for Review.

The Ninth Circuit has held that "the failure . . . to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question." *Windham v. Merkle*, 163 F.3d 1092, 1105-06 (9th Cir. 1998). There is no Supreme Court authority holding that a defendant in a non-capital case is constitutionally entitled to instructions on lesser included offenses. *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980); *Howell v. Mississippi*, 543 U.S. 440,

445 (2005) (suggesting *Beck* does not apply in non-capital cases).  The court of appeal thus could not have applied Supreme Court authority unreasonably when it denied this claim.  28 U.S.C. § 2254(d); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("[T]his Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.") (quotation omitted).

Moreover, in arguing that the evidence supported *sua sponte* jury instructions on voluntary manslaughter and provocation/imperfect-self-defense, Ward is impermissibly asking this Court to reexamine the court of appeal's interpretation and application of state law.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005).  The court of appeal's determination that the evidence did not warrant the instructions under California law is therefore binding on this Court.  Ward's argument that the alleged error amounts to a constitutional violation is merely an impermissible attempt to "transform a state law issue into a federal one merely by asserting a due process violation." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

Although Ward is correct in asserting that due process and the Sixth Amendment to the Constitution require that a jury be correctly instructed as to every element of the crime of which a defendant is charged and convicted, *see United States v. Gaudin*, 515 U.S. 506, 522-23 (1995),

the trial court did just that in this case.  The court instructed the jury on the elements of murder,

including express and implied malice.  Ward's claim instead concerns the proper application of

state law, which, as discussed *supra*, is beyond the purview of this Court in a federal habeas

proceeding.  *Estelle*, 502 U.S. at 67-68.  Accordingly, Ward is not eligible for relief on this

claim.

### 3. Claim Three: Failure to Adequately Instruct on Aiding and Abetting

Ward contends that his conviction must be reversed "because the trial court failed to

clarify the law when the jury sent notes which indicated it erroneously believed that it could find

petitioner guilty if he was an 'aider *or* abettor' as opposed to an 'aider *AND* abettor' of the

perpetrator in this case."  Ward argues that the trial court failed "to live up to its sua sponte duty

to instruct a jury on the general principles of law" in violation of his Fourteenth Amendment

right to due process, and that "[h]ad the court given the jury clarifying instructions and assured

the jury that it could not find the petitioner guilty unless he had such intent or he himself was the

shooter, it is reasonably probable the jury would not have found petitioner guilty of murder."

On direct appeal, the court of appeal rejected Ward's claim, holding as follows:

> It is true, as defendant contends, that a defendant must aid and abet a
> perpetrator to assume liability for the perpetrator's acts. (*People v. Beeman* (1984)
> 35 Cal. 3d 547, 199 Cal. Rptr. 60, 674 P.2d 1318.)  To aid, and not abet, would
> allow a conviction without the requisite mens rea to know of the perpetrator's
> unlawful purpose and to intend to facilitate, promote, encourage, or instigate the
> perpetrator's commission of the crime. (CALCRIM No. 401.) The court, of
> course, did not initiate the offending disjunctive; however, the jury inquiry did.
> Rather, the court properly instructed the jury in the language of CALCRIM Nos.
> 400 and 401. While it might have been preferable for the court to identify the
> juror error and clarify that defendant must have aided and abetted, we cannot say
> the court improperly instructed the jury. The instructions, including the court's
> response to the jury's inquiry, were an accurate description of the law on aiding
> and abetting.

*Ward*, 2010 WL 3038090, at *7.  The California Supreme Court denied Ward's Petition for Review.

Ward does not argue that the pattern jury instructions were erroneous, but that the trial court erred in failing to give additional instructions instead of referring the jury back to the pattern instructions.  However, Ward is again impermissibly asking this Court to reexamine the court of appeal's interpretation and application of state law.  As discussed *supra*, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw,* 546 U.S. at 76.  The court of appeal's determination that the instructions given, including the response to the jury's inquiry, were an accurate description of California law on aiding and abetting is binding on this Court, and Ward is not entitled to relief on this claim.

### 4. Claim Four: Wrongful Admission of Inflammatory Character Evidence

The trial court found that, under Rule 352 of the California Evidence Code, expert testimony on gang psychology and sociology introduced by the prosecution was probative of the motive of the shooter and was not substantially outweighed by the danger of undue prejudice, waste of time, or misleading of the jury.  The trial court similarly held that the guns, shells and ammunition found in Ward's bedroom corroborated a key witness's testimony, and that the probative value was not outweighed by the danger of undue prejudice, time consumption, or confusing the jury.

Ward argues that the admission of the gang evidence and ammunition found in his bedroom was improper and violated his Fourteenth Amendment right to due process.  He contends that this evidence was irrelevant because he was not charged with any gang-related

crimes or special circumstances, and that the evidence "mainly served to urge the jury that petitioner, like gang members, has [a] higher propensity toward crime."

The court of appeal rejected Ward's argument that the gang evidence was irrelevant and held that the trial court did not abuse its discretion in finding that the evidence was probative of motive and intent and not outweighed by any potential prejudice. *Ward*, 2010 WL 3038090, at *10. Rather, "[a]bsent an understanding that gang members react violently to any perceived act of disrespect and that it is part of a gang's code of conduct to avenge a slight to another gang member, the jury might not have appreciated the motive for the shooing." *Id.* The expert testimony was valuable in explaining "what, to the layperson, would have appeared to be a completely senseless shooting." *Id.* The court of appeal similarly found that the trial court did not abuse its discretion in admitting the shotgun, shells, and ammunition found in Ward's bedroom because "[t]he evidence was not introduced merely to show criminal propensity, but rather to bolster the credibility of a key prosecution witness and to demonstrate that the defendant had access to two shoguns within a few hours of the fatal shooting." *Id.* The California Supreme Court denied Ward's Petition for Review.

Ward's claim that the trial court erred in admitting this evidence is an issue of state law. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Simple errors of state law do not warrant federal habeas relief. *Id.* (citing *Estelle,* 502 U.S. at 67). Rather, the issue is whether "the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point." *Yarborough*, 568 F.3d at 1101 (citing *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir.1991)). "The admission of evidence does not provide a basis for

habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Id.*
(citations omitted).

Under AEDPA, even clearly erroneous admissions of evidence that render a trial
fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by
"clearly established Federal law," as set forth by the Supreme Court. *Yarborough*, 568 F.3d at
1101 (citing 28 U.S.C. § 2254(d)).  In cases where the Supreme Court has not adequately
addressed a claim, this Court cannot find a state court ruling unreasonable. *Id.* (citing *Musladin,*
549 U.S. at 77).

The Supreme Court "has made very few rulings regarding the admission of evidence as a
violation of due process." *Id.*  "Although the Supreme Court has been clear that a writ should be
issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet
made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due
process violation sufficient to warrant issuance of the writ." *Id.* (citing *Williams,* 529 U.S. at
375).  Absent such "clearly established Federal law," it cannot be concluded that the Court of
Appeal's ruling was an "unreasonable application." *Musladin,* 549 U.S. at 77.  Under the strict
standards of AEDPA, Ward is not entitled to relief on this claim.

### 5. Claim Five: Instructional Error as to Out-of-Court Statements

Ward argues, as he did on direct appeal, that CALCRIM No. 318 is erroneous on its face
because it "permits a jury to regard as truthful anything that [a] witness reported 'hearing' before
trial for the simple reason that the witness 'reported' hearing it before trial."  Ward also argues
that CALCRIM No. 318 undermined the limiting instruction given in conjunction with the
playing of the DVD of Bernadette Poulin's interview with the police because "it permitted the

14

jury to regard a pretrial hearsay report that petitioner supposity [sic] confessed, as evidence that

he made truthful statements."

The California Court of Appeal rejected Ward's claim that CALCRIM No. 318 is

erroneous on its face as follows:

> We must review jury instructions based on how a reasonable juror would
> construe them. (*People v. Clair* (1992) 2 Cal.4th 629, 688, 7 Cal.Rptr.2d 564, 828
> P.2d 705.) The ultimate test on appeal is "'whether there is a reasonable likelihood
> that the jury has applied the challenged instruction in a way' that violates the
> Constitution. [Citation.]" (*Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d
> 385].) We conclude that a reasonable juror would not construe the language of
> CALCRIM No. 318 in the manner suggested by defendant, nor is there any
> reasonable likelihood that the jury applied the instruction in a way that violates the
> Constitution.
>
> Defendant fundamentally misconstrues the instruction by assuming it applies
> to the hearsay declarant, not the witness. Such a construction is at odds with the
> express language of the instruction. CALCRIM No. 318 permits the jurors to use
> statements made by the "witness" before trial "[a]s evidence that the information in
> those earlier statements is true." As applied in this case, the instruction permitted the
> jury to use the statements Poulin made to the police as evidence that she had in fact
> told the police defendant had admitted the shooting before trial. She repeated the
> same testimony at trial. The instruction does not allow the jury to use her statements
> as evidence that what defendant, the declarant, said was true, but only that the
> witness's account of what she said was true. Thus, we reject defendant's notion that
> CALCRIM No. 318 is an unconstitutional exemption from the hearsay rule.

*Ward*, No. C060610, 2010 WL 3038090, at *8.

The court of appeal also rejected Ward's contention that the limiting instruction was at

odds with CALCRIM No. 318, and that, taken together, the two instructions confused the jury:

> First, the limiting instruction pertained only to the DVD. The DVD was
> played to rebut the defense's position that Poulin had fabricated her story because she
> was afraid she would lose her children and she wanted to protect others. The
> prosecution played the DVD specifically to reflect on her demeanor at the time she
> made the statement to the police. Thus, the limiting instruction was appropriate to the
> context in which it was delivered.

15

>       Second, the limiting instruction does not change the meaning of CALCRIM
> No. 318. We have already rejected defendant's construction of the standardized jury
> instruction. Quite simply, we do not believe a reasonable juror would construe it to
> mean he or she could use Poulin's pretrial statements as evidence that what defendant
> said was true. Thus, there is no inherent conflict between CALCRIM No. 318 and the
> limiting instruction, and nothing that we believe would have confused the jury.

*Id*. at *9.  The California Supreme Court denied Ward's Petition for Review.

Contrary to Ward's assertion, "the fact that [an] instruction was allegedly incorrect under

state law is not a basis for habeas relief."  *Estelle*, 502 U.S. at 71-72 (citing *Marshall v.

Lonberger*, 459 U.S. 422 n.6 (1983) ("[T]he Due Process Clause does not permit the federal

courts to engage in a finely tuned review of the wisdom of state evidentiary rules.")).  Rather, the

question is "whether the ailing instruction by itself so infected the entire trial that the resulting

conviction violates due process."  *Id*. at 72 (citations omitted).  It is well established that the

instruction "may not be judged in artificial isolation, but must be considered in the context of the

instructions as a whole and the trial record."  *Id*.  (quoting *Cupp v. Naughten*, 414 U.S. 141, 147

(1973)).  In reviewing ambiguous instructions, the question is "whether there is a reasonable

likelihood that the jury has applied the challenged instruction in a way that violates the

Constitution."  *Id*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).  Overall, the

Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very

narrowly."  *Id*.  (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Here, the court of appeal did not unreasonably apply controlling Supreme Court precedent

in holding that no reasonable juror could have construed the language of CALCRIM No. 318 in

the manner suggested by Ward.  On its face, the instruction applies only to statements made by

the witness, and not the hearsay declarant.  The instruction allowed the jury to use the statements

Poulin made to the police as evidence that she had in fact told the police that Ward had admitted

to the shooting.  Contrary to Ward's assertion, the instruction did not allow the jury to use Poulin's statements as evidence that what Ward, the declarant, said was true, but only that her account of what she said was true.  Nor was CALCRIM No. 318 in conflict with the limiting instruction given with respect to the DVD.  It properly admonished the jury that the taped interview was not being presented for the truth of the matter asserted, but for purposes of evaluating the demeanor of the speakers, and no reasonable juror could construe it to mean that he or she could use Poulin's pretrial statement as evidence that what Ward said was true.  The jury instructions were correct statements of the law and not in conflict with one another, and accordingly, there is no reasonable likelihood that the jury applied the instructions in a way that violates the Constitution.  *Estelle*, 502 U.S. at 72.  Therefore, Ward is not entitled to relief on this claim.

Claims Six, Seven, Eight and Ten overlap and are accordingly addressed by issue rather than by claim.  Construing Ward's claims broadly, *Erikson*, 551 U.S. at 94, Ward appears to argue as follows in Claims Six, Seven, Eight and Ten: (A) his sentence was unconstitutional because it was based on facts found true by the trial court and not the jury; (B) Ward was denied the opportunity to put Walker on the stand, amounting to judicial misconduct and ineffective assistance of counsel, which resulted in the jury not being required to find every element of the crime beyond a reasonable doubt and Ward to be convicted of a crime greater than Walker; (C) counsel was ineffective for failing to object to the trial court's response to the jury's question about Ward's liability under the theory of aiding and abetting; (D) counsel was ineffective for failing to request a jury instruction on voluntary manslaughter and provocation/imperfect self-defense; (E) counsel was ineffective for failing to investigate or call Chantel Eidel as a witness;

(F) counsel was ineffective for assuring Ward that he would not be convicted of a greater crime than Walker if he went to trial; and (G) counsel was ineffective for visiting with Ward infrequently and for short periods of time.

### 6. Claim 6(A): Unconstitutional Sentence

At the sentencing hearing, both Ward and a member of the victim's family made statements. Afterward, the court stated it was "astounded" by Ward's lack of appreciation for life, that the killing was "cold[-]blooded and cowardly," and that Ward's conduct was senseless and "brazen." The court sentenced Ward to life without parole.

Ward properly presented this claim for the first time in his habeas petition filed with the California Supreme Court, which summarily rejected Ward's petition. Where a state court issues an order that summarily rejects all claims raised by the defendant without discussion, this Court must presume that the state court adjudicated the claims on the merits absent some indication to the contrary. *Richter*, 131 S. Ct. at 784-85. Ward's burden "still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784.

Ward appears to argue that his sentence is unconstitutional under *Cunningham v. California*, 549 U.S. 270 (2007), because it was based on facts found by the trial court and not the jury. "[T]he Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." *Id*. at 274-75 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Ring v. Arizona*, 536 U.S. 584 (2002); *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005)). Rather, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

18

submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 282 (citing *Apprendi*, 530 U.S. at 490).

Here, contrary to Ward's assertion, the trial court did not impose a sentence above the statutory maximum based on facts not found by the jury, or impose any sentence at all on facts not found by a jury.  The jury found Ward guilty of first-degree murder and the special circumstance enhancement to be true.  Based on these findings, the trial court was required to sentence Ward to death or life without the possibility of parole.  Cal. Penal Code § 190.2(a)(21). The State of California elected not to pursue the death penalty, and accordingly the trial court could only impose life without the possibility of parole.  The statements Ward takes issue with were not additional facts found by the court, but were comments issued in response to Ward's statement at the sentencing hearing.  The state court's denial of his claims was not objectively unreasonable in light of clearly established United States Supreme Court authority, 28 U.S.C. § 2254(d)(1), and its decision was not an unreasonable interpretation of the facts in light of the evidence before the state court, 28 U.S.C. § 2254(d)(2).  Accordingly, Ward is not eligible for relief on this ground.

### 7. Claims 6(B)-(G): Judicial Misconduct & Ineffective Assistance of Counsel

Ward claims he was denied the opportunity to put Walker on the stand, amounting to judicial misconduct and ineffective assistance of counsel, which resulted in the jury not being required to find every element of the crime beyond a reasonable doubt and Ward to be convicted of a crime greater than Walker.  At trial, defense counsel made an offer of proof that he would like to call Walker to the stand to ask two questions: (1) whether Walker entered a plea to voluntary manslaughter; and (2) whether, when he introduced himself as a "Blood" at the park,

19

he meant to indicate a gang affiliation.  The state argued, *inter alia*, that although Walker's plea agreement required him to cooperate with and answer questions from defense counsel, the plea agreement gave the prosecution the authority to determine whether or not to call Walker as a witness.  The state argued that it would not grant Walker immunity if he testified, and under those circumstances, Walker's counsel would likely not allow him to testify.  Ward's defense counsel also stated that he believed that Walker's counsel would not allow him to testify because "if he messes up, then his plea agreement goes away," and that if called, Walker would most likely claim that answering counsel's questions would violate his right against self-incrimination. The court allowed Ward's counsel to telephone Walker's counsel at recess specifically regarding the second proposed question in order "to confirm what [defense counsel] suspect[ed] to be the case."  There do not appear to be any further discussions or rulings on the record regarding whether Walker could be called, and Walker was not called to testify.  Ward states in his Petition that, when he asked defense counsel why Walker was not being called, counsel stated, "[W]e can't call him."

Ward also claims trial counsel was ineffective for failing to investigate or call Chantel Eidel as a witness.  Ward claims that Eidel was in his car at the park where the shooting happened, and that she would have testified that she had never seen Ward with a gun that night or ever, that she did not see a gun in the car, and that she heard a gun shot but did not see or know where it came from.  Ward attached to his Traverse a copy of a police interview of Eidel in support of his argument that Eidel would have provided testimony helpful to his defense.

Ward also claims that trial counsel was ineffective for: (1) failing to object to the trial court's response to the jury's question about Ward's liability under the theory of aiding and

abetting; (2) failing to request a jury instruction on voluntary manslaughter and

provocation/imperfect self-defense; (3) visiting Ward infrequently and for short periods of time;

and (4) causing Ward to go to trial in reliance on his counsel's assurances that he would not be

convicted of a crime greater than Walker if he did so.

Ward properly brought these claims for the first time in his habeas petition filed with the

California Supreme Court, which summarily denied Ward's petition.  This Court presumes that

the state court adjudicated the claims on the merits absent an indication to the contrary, and

Ward's burden "still must be met by showing there was no reasonable basis for the state court to

deny relief."  *Richter*, 131 S. Ct. at 784-85.

Ward's claim of judicial misconduct is without merit.  The Due Process Clause of the

Fourteenth Amendment requires a fair trial in a fair tribunal before a judge "with no actual bias

against the defendant or interest in the outcome of the case."  *Bracy v. Gramley*, 520 U.S. 899,

904-05 (1997).  The Supreme Court has held that judicial bias is a structural error that can never

be found to be harmless.  *Chapman v. California*, 386 U.S. 18, 23 & n.8 (1966) (stating that the

right to an impartial judge is a constitutional right "so basic to a fair trial that [its] infraction can

never be treated as harmless error").  Judicial misconduct claims usually involve two types of

cases.  One group addresses charges of "judicial bias" stemming from a trial judge's "personal

interest" in the outcome of a case, usually derived from some extrajudicial association with the

cause or with one of the parties.  *See In re Murchison*, 349 U.S. 133, 136 (1955).  The second

group concerns charges of "judicial misconduct" in which the trial judge is accused of

conducting the proceedings in a manner that strongly suggests to the jury that the judge

disbelieves the defendant's case or otherwise favors the prosecution. *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Ward's claim does not fall into either category. Ward does not claim that the judge exhibited bias stemming from a personal interest in the case, or that the judge conducted the trial in a manner that favored the prosecution. Rather, even assuming that the court ultimately ruled that Walker could not testify, Ward disagrees with the merits of the court's decision. Bias can "almost never" be demonstrated solely on the basis of a judicial ruling. *Id*. at 555. A judge's remarks or opinions will not demonstrate bias unless they "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. Ward does not allege any basis for concluding that the purported ruling amounts to favoritism or antagonism. The state court's denial of his claims was therefore not objectively unreasonable in light of clearly established United States Supreme Court authority, 28 U.S.C. § 2254(d)(1), and its decision was not an unreasonable interpretation of the facts in light of the evidence before the state court, 28 U.S.C. § 2254(d)(2). Accordingly, Ward is not eligible for relief on this ground.

Ward also claims that by not allowing Walker to testify, the court failed to require the prosecution to prove beyond a reasonable doubt every element of the offense charged. This is because, as Ward alleges, "[w]ithout [the] principal's state of mind prosecution could not prove beyond a reasonable doubt every element of charged [sic], and more importantly the jury could not make sound judgment on the facts in their deliberations."

It is true that in order to convict Ward of the special circumstance the jury was required to find beyond a reasonable doubt that either he or another principal intended to shoot the victim.[1] However, as the California Court of Appeal noted in addressing Ward's sufficiency of the evidence claim, the Attorney General accepted Ward's "legal premise that the shooter must have intended to shoot at the victim and not merely at the car." *Ward*, 2010 WL 3038090, at *4. Ward instead appears to be arguing that without Walker's testimony, the evidence was insufficient to convict him. This is a reiteration of his earlier argument, which the court of appeal rejected, noting that the jury rejected the inference that the shooter did not intend to shoot the victim "based on the equally reasonable inference that the shooter was either a poor aim or knew the bullet would penetrate the door and his victim as well." *Id*. The court further held that given testimony that Ward had admitted to the shooting, "the jury could reasonably infer that the defendant intended to shoot the victim, who was little more than a sitting duck." *Id*. In other words, even in the absence of Walker's testimony, the prosecution presented evidence of the shooter's and Ward's intent.

---

[1] Ward is incorrect in asserting that in order to have been convicted of first degree murder the state must have proved Walker's intent beyond a reasonable doubt. First of all, it is not clear that Ward was found liable under the theory of aiding and abetting. The jury was not required to unanimously agree on the theory of liability; rather, some members of the jury could have found that Ward perpetrated the crime himself, while others could have found him guilty as an aider and abettor. A split jury is consistent with the fact that the jury could not agree to the special finding regarding whether Ward personally used a firearm in the commission of the offense. Even if he was convicted on a theory of aiding and abetting, the jury would have had to find beyond a reasonable doubt that *Ward* acted with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing or of encouraging or facilitating commission of the offense. *People v. Prettyman*, 926 P.2d 1013, 1020 (1996). In other words, it is *Ward's* intent and knowledge of the principal's purpose that are at issue and not Walker's intent.

As discussed *supra*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  In this case, the California Supreme Court did not unreasonably apply *Jackson*. Rather, the court apparently resolved any conflict in evidence in favor of the prosecution and found that there was evidence to support a conviction.  Ward bears the burden of establishing that these factual findings were erroneous, 28 U.S.C. § 2254(e)(1), a burden he has failed to carry.  The record does not compel the conclusion that no rational trier of fact could have found that the shooter intended to shoot the victim, especially considering the double deference owed under *Jackson* and AEDPA.  Accordingly, Ward is not eligible for relief on this ground.

Ward also argues that his trial counsel was ineffective for: (1) failing to call Walker to testify; (2) failing to object to the trial counsel's response to the jury's question about Ward's liability under the theory of aiding and abetting; (3) failing to request a jury instruction on voluntary manslaughter and provocation/imperfect self-defense; (4) assuring him that if he went to trial he would not be convicted of a crime greater than Walker; (5) failing to investigate or call Eidel as a witness; and (6) visiting with Ward infrequently and for short periods of time.

Under *Strickland v. Washington*, to demonstrate ineffective assistance of counsel, Ward must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*.  Ward must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a

24

reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

> In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

*Knowles*, 556 U.S. at 123. It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard. *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law." *Richter*, 131 S. Ct. at 785.

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Id.* at 786.

Inquiry focuses on the adversarial process, not petitioner's relationship with counsel.  As long as counsel is a reasonably effective advocate, he meets constitutional standards, irrespective of petitioner's evaluation of his performance.  Thus, no weight is attached to the petitioner's expression of satisfaction with counsel's performance at the time of trial, or to his later expression of dissatisfaction.  *Cronic*, 466 U.S. at 657 n.21.

Ward bears the burden of proving that counsel's trial strategy was deficient.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689.  "[He] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."  *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).  "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."  *Id.*  (quoting *Strickland*, 466 U.S. at 689).  "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."  *Strickland*, 466 U.S. at 681.

Contrary to Ward's assertion, his trial counsel did attempt to call Walker to testify, but it appears he either was prevented from calling him or elected not to call him after being told by Walker's counsel that Walker would refuse to answer defense counsel's questions by claiming his Fifth Amendment right against self-incrimination.  Because Walker either could not or would

not testify, the California Supreme Court did not unreasonably conclude that counsel's decision

not to call Walker was the exercise of reasonable professional judgment.

Although Ward claims counsel was also ineffective for failing to investigate or call Eidel

as a witness, the United States Supreme Court has said that counsel need not undertake

exhaustive witness investigation.  The question is not "what is prudent or appropriate, but only

what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *Cronic*,

466 U.S. at 665 n.38).  While "counsel has a duty to make reasonable investigations or to make a

reasonable decision that makes particular investigations unnecessary," an attorney's strategic

decisions "made after thorough investigation of law and facts relevant to plausible options are

virtually unchallengeable." *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after less than

complete investigation are reasonable precisely to the extent that reasonable professional

judgments support the limitations on investigation." *Id*. at 690-91.

Here, the California Supreme Court reasonably concluded that defense counsel's failure

to investigate or call Eidel to testify was neither deficient nor prejudicial.  In her police interview,

Eidel states that at the time of the shooting, Ward was driving, Roo was in the passenger's seat,

Eidel was in the backseat directly behind Walker, Lupe sat next to Eidel, and Walker sat next to

Lupe behind Roo.  In her interview, Eidel did state that although she heard the gun go off, she did

not see who shot the gun and had never, in the six months she knew Ward on a casual basis, seen

him with a gun.  However, she did state that neither Lupe nor Walker fired the gun and that she

could not say for sure whether Ward or Roo fired the gun.  The court of appeal held that there

was forensic evidence that the driver fired the shot, a finding which Ward does not contest.

Given that defense counsel's theory of the case was that there was no direct or circumstantial

evidence that Ward fired the shot and that Walker was the perpetrator, the California Supreme Court reasonably held defense counsel's failure to investigate or call Eidel to testify was a sound trial strategy because her testimony would have undermined this theory.

The California Supreme Court reasonably concluded that Ward's remaining claims did not amount to ineffective assistance of counsel.  In light of the court of appeal's holding that there was insufficient evidence to warrant an instruction on voluntary manslaughter and provocation/imperfect self-defense, a request by trial counsel for these instructions would most likely have been unsuccessful, and counsel's failure to request them would reasonably have been found by the California Supreme Court to have constituted reasonable trial strategy.  Similarly, given the court of appeal's holding that the trial court's response to the jury's questions accurately set forth the theory of aiding and abetting under California law, an objection would most likely have been unsuccessful and counsel's failure to object would also have reasonably been found to be within the bounds of professional judgment.  Although Ward claims to have relied on counsel's assurance that he would not be found guilty of a crime greater than Walker if he went to trial, an ineffective assistance of counsel inquiry focuses on the adversarial process, not petitioner's relationship with counsel.  Accordingly, no weight is given to Ward's after-the-fact expression of dissatisfaction with counsel.  *Cronic*, 466 U.S. at 657 n.21.  Lastly, Ward does not indicate how additional or longer visits would have resulted in a more favorable outcome at trial.

Therefore, this Court cannot say that the decision of the California Supreme Court to deny Ward relief on his ineffective assistance of counsel claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

28

of the United States" or "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Ward has failed to

overcome the strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance and is accordingly not eligible for relief on this claim.

### 8. Claim Nine: Violation of he Double Jeopardy Clause and the Prohibition Against Cruel and Unusual Punishment

Ward claims that he was given invalid, multiple punishments for the same act in violation

of the Double Jeopardy Clause of the Fifth Amendment because the same circumstance that was

used to convict him of first degree murder–i.e., shooting of the victim from motor vehicle–was

also used to find the special circumstance to be true.

Ward also argues that his sentence of life without the possibility of parole violated the

Eighth Amendment's prohibition against cruel and unusual punishment because he was punished

multiple times for the same act, he had no prior criminal record, and "he was found as an aider

and abettor while the actual shooter got 12 years."

Ward properly presented this claim for the first time in his habeas petition filed with the

California Supreme Court, which denied Ward's petition without comment.  This Court must

therefore presume that the state court adjudicated the claims on the merits absent an indication to

the contrary, and Ward's burden "still must be met by showing there was no reasonable basis for

the state court to deny relief."  *Richter*, 131 S. Ct. at 784-85.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through

the Fourteenth Amendment, provides: "[N]or shall any person be subject for the same offence to

be twice put in jeopardy of life or limb."  The Supreme Court has previously held that this clause

protects against successive prosecutions for the same offense after acquittal or conviction and

29

against multiple criminal punishments for the same offense. *Monge v. California*, 524 U.S. 721, 727-28 (1998) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  It is not, however, applicable to sentencing proceedings, because the determinations at issue do not place a defendant in jeopardy for the same "offense."  *Id*. at 727 (citations omitted).  "Nor have sentence enhancements been construed as additional punishment for the previous offense; rather, they act to increase a sentence 'because of the manner in which [the defendant] committed the crime of conviction.'" *Id*. (citing *United States v. Watts*, 519 U.S. 148, 154, (1997) (per curiam); *Witte v. United States*, 515 U.S. 389, 398-399 (1995)).  Because the Supreme Court does not construe a sentence enhancement as additional punishment for the previous offense in violation of the Double Jeopardy Clause, the California Supreme Court's decision was not contrary to or an unreasonable application of established Federal law, 28 U.S.C. § 2254(d)(1), and Ward is not entitled to relief on this claim.

Ward's claim that his sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment is equally meritless.  The Eighth Amendment, which applies to the States by virtue of the Fourteenth Amendment, *see Robinson v. California*, 370 U.S. 660 (1962), provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  The Supreme Court has held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation omitted).  The Supreme Court has never categorically held that a mandatory sentence of life without the possibility of parole imposed on adult homicide offenders violates the Eighth

Amendment, and, in fact, has upheld mandatory life without parole sentences for non-violent

offenders.  *See, e.g.*, *Harmelin v. Michigan*, 501 U.S. 957 (1991) (upholding a mandatory life

without parole term for a defendant convicted of possessing more than 650 grams of cocaine).

*But see Solem v. Helm*, 463 U.S. 277 (1983) (sentence of life imprisonment without possibility of

parole imposed upon a defendant who was convicted of uttering "no account" check for $100 and

who had three prior convictions was disproportionate under the Eighth Amendment).

Here, the California Supreme Court upheld Ward's conviction of life without the

possibility of parole where Ward was convicted of the intentional and unprovoked murder of an

unarmed man by the use of a firearm.  Ward's is not "the rare case in which a threshold

comparison of the crime committed and the sentence imposed leads to an inference of gross

disproportionality."  *Ewing v. California*, 538 U.S. 11, 30 (2003) (quoting *Harmelin,* 501 U.S., at

1005 (Kennedy, J., concurring in part and concurring in judgment)).  The California Supreme

Court's decision affirming Ward's sentence was therefore not "contrary to, or [did not] involve[]

an unreasonable application of," the gross disproportionality principle, the contours of which are

unclear.  *Lockyer*, 538 U.S. at 73 (2003).  Accordingly, Ward is not eligible for relief on this

claim.

## V.  CONCLUSION AND ORDER

Ward is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Ward's request for an evidentiary hearing is

**DENIED**.

31

**IT IS FURTHER ORDERED THAT** Ward's Motion to Amend his Petition at **Docket No. 34** is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated:  March 20, 2013.

     /s/ James K. Singleton, Jr.     
JAMES K. SINGLETON, JR.
United States District Judge
